## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| HECTOR LaBOY (#B-63282), | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 11 C 3950 ) ) |
| PARTHASARATHI GHOSH, *et al.*, | ) ) |
| Defendants. | ) |

### MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff, an Illinois state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants, two physicians at the Stateville Correctional Center, violated his constitutional rights by acting with deliberate indifference to his serious medical needs when they provided deficient care and treatment for his knee injury. *See Cotts v. Osafo,* 692 F.3d 564, 567 (7th Cir. 2012) ("The constitutional source of a deliberate indifference claim is the Eighth Amendment's ban on cruel and unusual punishment."). Before the Court is Defendants' renewed motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). For the reasons stated in this order, the Court grants Defendants' motion and dismisses this lawsuit in its entirety.

### BACKGROUND

Plaintiff is an Illinois state prisoner confined at the Stateville Correctional Center at all times relevant to this action. (R. 7, Compl., p. 1, Section I.) Both Defendants Drs. Parthasarathi Ghosh and Liping Zhang were staff physicians at Stateville – employed by Wexford Health Sources, Inc. (*Id.*, p. 2, Section II.)

In 2007, Plaintiff began experiencing knee problems and took medication sporadically to address the knee pain. (R. 65, Defs.' Ex. C, LaBoy, Dep. at pp. 14-16; Compl., Ex. B, 6/6/09 Medical Progress Notes.) On June 4, 2009, Plaintiff sustained an injury while playing basketball. (Pl.'s Dep., p. 18.) Specifically, after jumping in the air, he landed on his left knee and painfully twisted it. (*Id.*, p. 19.) About fifteen or twenty minutes later, he was taken by wheelchair to the prison's health care unit. (*Id.*, p. 20.)

The emergency room physician, Dr. Ghosh, attended to Plaintiff's injury at that time. (*Id.*) Dr. Ghosh prescribed Tylenol (500 mg. strength), and ordered an x-ray. (Compl., ¶ 2.) In addition, Dr. Ghosh provided Plaintiff with crutches, a knee brace, and ice. (*Id.*; Pl.'s Dep., pp. 21-22.) Dr. Ghosh also issued Plaintiff a low bunk/low gallery permit and an ice permit. (*Id.*) Plaintiff was discharged from the health care unit later that day. (*Id.*, p. 23.)

Plaintiff had an x-ray taken five days later on June 9, 2009. (*Id.*) Plaintiff was informed that the x-ray results were "negative" (presumably for a broken bone, although the report does not elaborate on the negative notation). (Compl., Ex. E, 6/9/09 X-ray Report.) Thereafter, Plaintiff was "consistently" assigned a low bunk. (Pl.'s Dep., p. 25.) He rarely got ice, however, other than the ice that were passed out to the inmates once a day due to the heat. (*Id.*, p. 26.) He was able to walk, but "with a limp and in extreme pain." (*Id.*, pp. 27, 33.)

On June 24, 2009, Plaintiff told a physician's assistant identified as Ms. Williams, who is not a Defendant to this lawsuit, that he had never received his prescribed pain medication and that his knee was "collapsing" whenever he put weight on it. (Compl. ¶ 4; Pl.'s Dep., p. 34.) Williams scheduled Plaintiff for a follow-up appointment with a physician, and on July 1, 2009, Dr. Zhang examined Plaintiff. (*Id.* ¶¶ 4, 5; Plaintiff's Dep. pp. 23-24.) Plaintiff told Dr. Zhang about the lack of pain medication and the knee buckling. (Compl. ¶ 5.) Furthermore, Plaintiff

2

requested physical therapy, an MRI, and a renewed permit for crutches. (*Id.*) Dr. Zhang gave Plaintiff knee braces instead of crutches. (*Id.*, Pl.'s Dep., pp. 54-56.) In addition, Dr. Zhang gave Plaintiff ten tablets of Acetaminophen for his pain. (Compl. ¶ 5; Pl.'s Dep., p. 28.) Plaintiff continued to use a knee brace over the next year and a half. (Pl.'s Dep., p. 26.)

On July 2, 2009, Plaintiff purportedly sent a letter to Dr. Ghosh via institutional mail concerning the denial of crutches. (Compl. ¶ 6; Pl.'s Dep., pp. 29-30.)[1] Plaintiff, however, does not know whether Dr. Ghosh actually received the letter. (Pl.'s Dep., p. 31.) On July 13, 2009, Plaintiff sent another letter to Dr. Ghosh regarding his persistent pain and the lack of pain medication. (*See* Compl. ¶ 9.) In response to the grievance, on July 14, 2009, Plaintiff's counselor informed Plaintiff that no further treatment was scheduled, noting, "It is not uncommon for the pain to persist for a month or two after such an injury." (*Id.* ¶ 10.) On July 15, 2009, Plaintiff allegedly sent another letter to Dr. Ghosh demanding pain medication. (Compl. ¶ 11.) Meanwhile, on July 22, 2009, Plaintiff saw a physician's assistant. (Pl.'s Dep., p. 32.) Plaintiff told the physician's assistant that he was in severe pain, that he had never received any pain medication, and that his knee was not getting any better. (*Id.*, p. 33.) The physician's assistant ordered Tylenol, "among other things." (Compl. ¶ 12.)

On July 28, 2009, Plaintiff finally received his prescribed pain medication. (Pl.'s Dep., p. 61.) After that, Plaintiff did not experience any problems in receiving his pain medication. (*Id.*) Indeed, Plaintiff began receiving pain medication on a full-time basis after July 28, 2009.

---

[1] Plaintiff has no copies or other documentation of the three letters he allegedly sent to Dr. Ghosh. (Pl.'s Dep., pp. 29-31.) Dr. Ghosh does not recall ever having received or reviewed any letters from Plaintiff. (Defs.' Ex. D, Ghosh's Answers to Pl.'s Interrog., ¶ 23.) Further, Dr. Ghosh notes that no such letters are contained in Plaintiff's medical charts, although letters to other health care professionals are in Plaintiff's medical file. (*Id.*; *see also* R. 70, Pl.'s Exs. 21-23.)

(*Id.*, p. 29.)

On September 5, 2009, Plaintiff had a second appointment with Dr. Zhang. (Compl. ¶ 15.) Plaintiff told Dr. Zhang that he was still experiencing severe pain and that his knee continued to collapse when he walked. (*Id.*) Dr. Zhang became "hostile," scolding Plaintiff that the injury was his fault before muttering something in a foreign language that Plaintiff did not understand. (*Id.*)

On November 4, 2009, Plaintiff saw physician's assistant Williams again. (Pl.'s Dep., p. 33.) Plaintiff told Williams that he had not recovered from his injury and that something was wrong. (*Id.*, p. 34.) Williams looked at Plaintiff's knee but did not conduct any kind of in-depth examination. (*Id.*) Although Plaintiff asserts that he does not recall Williams actually testing his extension or strength, she wrote in Plaintiff's medical progress notes that he had "good" strength and full range of motion. (*Id.*, p. 35.) Plaintiff asked for a refill of his pain medication. (*Id.*) Williams prescribed more Tylenol and issued a referral for Plaintiff to return to Dr. Ghosh and told Plaintiff there was nothing more she could do for him. (Compl. ¶ 17.)

On November 25, 2009, Plaintiff sent a letter to Williams via institutional mail asking why Dr. Ghosh had not yet called him to the health care unit for an appointment. (Compl. ¶ 18.) On November 29, 2009, Plaintiff handed a letter to a medical technician. (*Id.* ¶ 19.) In the letter, Plaintiff insisted that he was still in great pain and inquired why the doctor was not seeing him. (*Id.*) On December 1, 2009, Plaintiff gave another medical technician a similar letter pleading for medical attention. (*Id.* ¶ 20.)

On December 20, 2009, Plaintiff sent a letter to the warden detailing his travails. (Compl. ¶ 21.) Two days later on December 22, 2009, Plaintiff had an appointment with Dr. Ghosh. (Pl.'s Dep., p. 35.) Dr. Ghosh issued Plaintiff medical permits for a lower bunk and for

knee braces. (*Id.*) Also, Dr. Ghosh authorized a referral to the physical therapy clinic for evaluation. (*Id.*, p. 36.)

On January 4, 2010, Plaintiff's leg gave out as he was climbing down from his top bunk. (*Id.*, pp. 37-38.) Plaintiff blames his upper-bunk assignment on the IDOC, and not Defendants, because he had a lower bunk permit from the doctors at that time. (*Id.*, p. 60.) Plaintiff fell to the concrete floor, which caused pain and may have aggravated his knee injury. (Compl. ¶¶ 23-24; Pl.'s Dep., pp. 38-39.) The next day, Plaintiff told a medical technician what had happened and asked to see a doctor, however, he was never issued a call pass to the medical unit. (Compl. ¶ 24.)

After Plaintiff's wife called the Stateville Correctional Center to complain about the quality of his medical care, Dr. Ghosh scheduled Plaintiff for an MRI at an outside hospital. (Pl.'s Dep., p. 58.) The MRI was taken on June 18, 2010. (Pl.'s Dep., p. 39.) Based on the MRI results, doctors concluded that Plaintiff was suffering from "chronic ACL tear, a torn lateral meniscus, and mild quadriceps tendinosis." (Compl., Ex. O.)

In September 2010, Plaintiff had an orthopedic consultation at the University of Illinois Medical Center. (*Id.*, p. 44.) On November 29, 2010, doctors performed reparative surgery and Plaintiff started physical therapy the next day. (Pl.'s Dep., pp. 49-50.) In fact, Plaintiff underwent physical therapy on Tuesdays and Thursdays for several months following the surgery. (*Id.*, p. 51.) Currently, Plaintiff's knee pain is at a "minimum," and occurs only from time to time. (*Id.*, p. 52.) Plaintiff is unable to squat for long periods, but is able to play basketball. (*Id.*)

Throughout the time period in question, Plaintiff held prison job assignments. (Pl.'s Dep., pp. 10-12; 49.) In 2009, Plaintiff was a paralegal in the law library, and then a clerk in the

5

clothing department. (*Id.*, pp. 11-12.) Plaintiff also had a job as a prison porter from around October 15, 2010, to October 15, 2011. (*Id.*, pp. 10-11.) His job duties as a porter were custodial in nature, and included cleaning, mopping, sweeping, and picking up the garbage. (*Id.*, p. 10.) Plaintiff was able to fulfill his job responsibilities "with no problem." (*Id.*, p. 49.)

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

### ANALYSIS

Correctional officials and health care providers may not act with deliberate indifference to an inmate's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251(1976); *Holloway v. Delaware County Sheriff,* 700 F.3d 1063, 1072 (7th Cir. 2012). Deliberate indifference has both an objective and a subjective element: (1) the inmate must have an objectively serious medical condition; and (2) the defendant must be subjectively aware of

and consciously disregard the inmate's medical need. *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Roe v. Elyea*, 631 F.3d 843, 862 (7th Cir. 2011).

**I.     Objectively Serious Medical Need**

The Court will assume for purposes of this motion that Plaintiff's injured knee constitutes a serious medical need. "A medical need is considered sufficiently serious if the inmate's condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention." *Roe,* 631 F.3d at 857 (internal quotation marks and punctuation omitted). A condition is also objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). A torn tendon or ligament constitutes an objectively serious medical condition. *See, e.g., Hampton v. Hart*, No. 09 C 6269, 2011 WL 2837407, at *5 n.3 (N.D. Ill. Jul. 18, 2011) (collecting cases); *Mazariegos v. Cooper*, No. 99 C 7628, 2001 WL 293121, at * 3-4  (N.D. Ill. Mar. 23, 2001) (same).

**II.    Deliberate Indifference**

Accepting the proposition that Plaintiff's knee problems were an objectively serious medical condition, Plaintiff nevertheless has failed to satisfy the subjective component of the deliberate indifference test. To establish deliberate indifference, a prisoner must demonstrate that the defendant in question was aware of and consciously disregarded the inmate's medical need. *See Farmer*, 511 U.S. at 837; *Estelle*, 429 U.S. at 103-04. "This subjective standard requires more than negligence and it approaches intentional wrongdoing." *Holloway,* 700 F.3d at 1073 ("The Supreme Court has compared the deliberate indifference standard to that of criminal recklessness."). Meanwhile, "a successful plaintiff need not 'show that he was literally ignored' in his demands for medical treatment, and a defendant's showing that a plaintiff

7

received '*some*' treatment does not resolve the issue conclusively if the treatment was 'blatantly inappropriate.'" *Roe,* 631 F.3d at 858 (quoting *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005)) (emphasis in original)).

The subjective element of deliberate indifference encompasses conduct such as the refusal of effective treatment, *see Fields v. Smith,* 653 F.3d 550, 556 (7th Cir. 2011), or erroneous treatment based on a substantial departure from accepted medical judgment, practice, or standards. *See Roe*, 631 F.3d at 857. Neither medical malpractice nor a mere disagreement with a doctor's medical judgment, however, amounts to deliberate indifference. *See Holloway*, 700 F.3d at 1073; *see also King v. Kramer,* 680 F.3d 1013, 1018 (7th Cir. 2012) ("Negligence – even gross negligence – is insufficient to meet this standard"). Also, a "prisoner is not entitled to receive 'unqualified access to healthcare,'" instead "prisoners are entitled only to 'adequate medical care.'" *Holloway*, 700 F.3d at 1073 (internal citation and citations omitted).

Viewing the record in Plaintiff's favor, he has failed to establish that Dr. Ghosh or Dr. Zhang provided medical care so deficient as to be actionable under 42 U.S.C. § 1983. Even though the MRI taken after Plaintiff re-injured his knee on January 4, 2010 revealed that Plaintiff had a torn ligament, Defendants' initial assessment of – and treatment for – Plaintiff's sprained or twisted knee was not so far off the mark as to rise to the level of a constitutional violation. Plaintiff was able to walk (though with difficulty, he contends), held prison job assignments, and had lived with chronic knee problems for several years. Moreover, it is uncontested that his June 9, 2009 x-ray results were "negative."

In light of the non-readily apparent severity of Plaintiff's injury, Defendants' conservative, but progressive course of treatment does not reflect deliberate indifference. Indeed, inmates are not constitutionally entitled either to "demand specific care" or even to

receive the "best care possible;" rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011). Here, Plaintiff's continued treatment of his knee problems was not blatantly inappropriate. *See Roe,* 631 F.3d at 858. Drs. Ghosh and Zhang started with a low bunk/low gallery permit, ice, knee braces, pain relievers, and a physical therapy referral before referring Plaintiff for an MRI that eventually led to his surgery. This medical treatment was not so far afield of accepted professional standards based on the information Drs. Ghosh and Zhang had during the relevant time period. Even viewing the evidence in a light most favorable to Plaintiff, this is not a case where a prison physician merely continued with a course of treatment that the physician knew was ineffective in treating the inmate's serious medical condition. *See id.*

The Seventh Circuit teaches that "[t]here is not one 'proper' way to practice medicine in prison, but rather a range of acceptable courses based on prevailing standards in the field." *Holloway,* 700 F.3d at 1073 (quotation omitted). A prison physician is generally free to determine the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards. *See id.* at 1073-74; *Lee v. Young,* 533 F.3d 505, 511 (7th Cir. 2008) ("Prison officials are expected to 'act responsibly under the circumstances that confront them' but are not required to act flawlessly.") (citation omitted). Meanwhile, Plaintiff has not produced any competent, admissible evidence demonstrating that he was denied medically necessary treatment or that Drs. Zhang and Ghosh were not exercising their professional judgment. *See Holloway,* 700 F.3d at 1073-74.

On a final note, it is regrettable that Plaintiff went without pain medication in part of June and July 2009, but there is nothing in the record suggesting that Dr. Ghosh or Dr. Zhang knew

9

that Plaintiff had not received his prescribed medications during that time period. Even accepting as true that Plaintiff sent letters to Dr. Ghosh about his access to pain medication, there is no evidence in the record that Dr. Ghosh actually received these letters. More importantly, any indifference to Plaintiff's medical needs in this context involved the prison personnel who distributed prescriptions to the inmates. *See Munson v. Gaetz,* 673 F.3d 630, 637 (7th Cir. 2012) (citing *Minix v. Canarecci*, 597 F.3d 824, 833-34 (7th Cir. 2010)); *see also Arnett,* 658 F.3d at 755.

Moreover, Dr. Zhang's choice to replace Plaintiff's crutches with knee braces was a matter of medical judgment. Again, a prison health care provider "may be held to have displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Roe*, 631 F.3d at 857. Dr. Zhang's decision did not "demonstrate an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Arnett*, 658 F.3d at 751.

Because there is no genuine dispute as to the material facts in this matter, Defendants Drs. Zhang and Ghosh are entitled to judgment as a matter of law.

## CONCLUSION

For the reasons given, the Court grants Defendants' motion for summary judgment brought pursuant to Federal Rule of Civil Procedure 56(a) and dismisses this lawsuit in its entirety. If Plaintiff wishes to appeal this final order, he may file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal.

*See* Fed. R. App. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. *See Evans v. Illinois Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, Plaintiff may also be assessed a "strike" under 28 U.S.C. § 1915(g). Plaintiff is warned that, pursuant to that statute, if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury. *Id.*

**Dated:** January 17, 2013

        **ENTERED**

        *[signature]*
        **AMY J. ST. EVE**
        **United States District Judge**